UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

JUN 03 2012

**FILED**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:11-cr-22-01-JL |
| | ) | |
| JOSE REYES | ) | |
| a/k/a TONY | ) | |
| | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United

States of America, by its attorney, John P. Kacavas, United States Attorney for the District of

New Hampshire, and the defendant, Jose Reyes, and his attorney, Paul Garrity, Esquire, enter

into the following Plea Agreement.

**1. The Plea and Offense**.

The defendant, Jose Reyes, agrees to plead guilty to the United States' Superseding

Information, which charges him with:

> (1)  engaging in a conspiracy beginning in or about June, 2005, and
>
>  continuing to in or about March, 2011, in the District of
>
>  New Hampshire and the District of Massachusetts, to distribute cocaine, a
>
>  schedule II controlled substance, (Count One (1)), in violation of Title 21,
>
>  United States Code, Section 841(a)(1) and 846; and
>
> (2)  distribution of cocaine, a schedule II controlled substance, on April
>
>  4, 2010 (Count Two (2)), April 6, 2010 (Count Three (3)), and April
>
>  20, 2010 (Count Four (4)), in violation of Title 21, United States
>
>  Code, Section 841(a)(1).

2

## 2. **The Statute and Elements of the Offense**.

Title 21, United States Code, Section 846 provides that:

> [a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

See 21 U.S.C. § 846.

In order to prove that defendant engaged in a conspiracy beginning in or about June, 2005, and continuing to in or about March, 2011, in the District of New Hampshire and the District of Massachusetts, to distribute cocaine, a schedule II controlled substance, as stated in Count One (1) of the Superseding Information, the Government would have to prove the following four (4) essential elements beyond a reasonable doubt:

**One:**   A conspiracy involving two or more persons must have existed to commit the offense charged in the Information, to wit, to distribute cocaine, a schedule II controlled substance;

**Two:**   The defendant must have joined the conspiracy with knowledge of the existence of the conspiracy and its criminal objectives;

**Three:** The defendant must have knowingly, voluntarily and intentionally become a member of the conspiracy; and

**Four:**   In joining the conspiracy, defendant must have intended to achieve the unlawful objectives of the conspiracy.

Title 21, United States Code, Section 841(a)(1) provides, in pertinent part, that:

> **(a)** Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally -
>
> > **(1)** to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . .

See 21 U.S.C. § 841(a)(1).

3

In order to prove that defendant engaged in the distribution of cocaine, a schedule II controlled substance, on April 4, 2010 (Count Two (2)), April 6, 2010 (Count Three (3)), and April 20, 2010 (Count Four (4)), the Government would have to prove the following three (3) essential elements beyond a reasonable doubt:

**One:** Defendant possessed the controlled substance cocaine on the

dates alleged in the Superseding Information;

**Two:** Defendant knew the substance was cocaine; and

**Three:** Defendant distributed the controlled substance cocaine.

### 3. **Offense Conduct**.

The defendant stipulates and agrees that if this case proceeded to trial, the United States would prove the following facts beyond a reasonable doubt.

In March, 2010, members of the Manchester, New Hampshire, Police Department were contacted by a confidential informant ("CI # 1") who was interested in providing information regarding drug related activity occurring at 27 Pennacook Street, Manchester, New Hampshire. CI # 1 informed law enforcement that the first floor of the 27 Pennacook Street was occupied by a Hispanic male named "Tony," subsequently identified by law enforcement as Jose Reyes. CI # 1 also indicated that it had observed a constant flow of foot and vehicular traffic at 27 Pennacook Street and it had observed hand-to-hand exchanges in the alley behind the residence.

On March 19, 2010, law enforcement engaged in the arrest of an individual for possession of cocaine. At the time of the arrest, the individual was in possession of a syringe and spoon and indicated that it used the items in order to use cocaine intravenously. The individual revealed that it purchased cocaine from a runner who obtained it from a residence located on Pennacook Street. It stated that the cocaine was purchased from two (2) Hispanic males, "Tony" and "Peter."

4

On April 4, 2010, law enforcement met with a second confidential informant (CI # 2). CI # 2, who had been arrested for drug-related offenses, agreed to cooperate with law enforcement in exchange for consideration. CI # 2 advised law enforcement that it frequently obtained cocaine for its use from 27 Pennacook Street. CI # 2 revealed that the cocaine source at the residence was "Tony," and that another individual named "Johnny" also distributed cocaine at the location. CI # 2 also stated that it met "Tony" and "Johnny" through a mutual friend and that it had been engaged in the purchase of cocaine from "Tony" and "Johnny" for approximately six (6) months.

CI # 2 informed law enforcement that "Tony" and "Johnny" were originally from Lawrence, Massachusetts. It also stated that it obtained cocaine between 2 - 3 times each week from "Tony" and "Johnny" and that it had previously purchased a one (1) ounce quantity of cocaine. CI # 2 also stated it was aware that "Tony" and "Johnny" maintained another distribution location, which was located near Somerville Street.

Based upon the information provided by CI # 2, law enforcement utilized it in order to engage in nine (9) controlled purchases of cocaine, including:

     (1)    the purchase of 3.21 grams of cocaine on April 4, 2010 (Count Two (2)), from "Tony" at 27 Pennacook Street, 1st Floor, in exchange for $200.00 in United States currency;

     (2)    the purchase of 2.64 grams of cocaine on April 6, 2010 (Count Three (3)), from "Tony" at 27 Pennacook Street, 1st Floor, in exchange for $200.00 in United States currency;

     (3)    the purchase of 3.15 grams of cocaine on April 8, 2010, from "Johnny" at 842 Somerville Street, 1st Floor, in exchange for $180.00 in United States currency;[1]

---

[1]Prior to the transaction, CI # 2 contacted "Tony" in order to arrange for the purchase of cocaine. "Tony" instructed CI # 2 to travel to the Somerville residence in order to engage in the purchase. Before obtaining the cocaine, "Tony" contacted the CI and informed it that "Johnny" would meet with it at 842 Somerville Street in order to engage in the sale.

5

(4)     the purchase of 2.94 grams of cocaine on April 13, 2010, from "Johnny" at 842 Somerville Street, 1st Floor, in exchange for $180.00 in United States currency;[1]

(5)     the purchase of 2.32 grams of cocaine on April 14, 2010, from "Johnny" at 27 Pennacook Street, 1st Floor, in exchange for $180.00 in United States currency;[2]

(6)     the purchase of 2.57 grams of cocaine on April 20, 2010 (Count Six (6)), from "Tony" at 27 Pennacook Street, 1st Floor, in exchange for $180.00 in United States currency;[3]

(7)     the purchase of 2.67 grams of cocaine on April 23, 2010, from "Peter" at 27 Pennacook Street, 1st Floor, in exchange for $180.00 in United States currency;[4]

(8)     the purchase of 2.34 grams of cocaine on April 26, 2010, from "Peter" at 27 Pennacook Street, 1st Floor, in exchange for $180.00 in United Stats currency;[2] and

(9)     the purchase of 2.42 grams of cocaine on April 28, 2010, from "Peter" at 27 Pennacook Street, 1st Floor, in exchange for $180.00 in United States currency.

Prior to all of the transactions, CI # 2 called (603) 261-1031 in order to arrange for the

purchase of cocaine. At times, "Tony" answered the telephone and conducted the transaction,

and at other times "Johnny" or "Peter" answered the telephone and engaged in the transaction.

During all of the transactions, CI # 2 was searched prior to and following contact with the targets

with negative results. In addition, during the transactions, CI # 2 was provided with United

---

[1]Prior to the transaction, CI # 2 contacted "Tony" in order to arrange for the purchase of cocaine. "Tony" instructed CI # 2 to travel to the Somerville residence in order to engage in the purchase. CI # 2 traveled to 842 Somerville Street, 1st Floor, and met with "Johnny," who conducted the transaction.

[2]When CI # 2 attempted to contact "Tony" at (603) 261-1031, "Johnny" answered the telephone and arranged to conduct the transaction. "Johnny" told CI # 2 to travel to 27 Pennacook Street in order to obtain the cocaine.

[3]CI # 2 contacted "Tony" at (603) 261-1031 in order to arrange for the transaction. During the conversation, "Tony" instructed CI # 2 to travel to 27 Pennacook Street. While at 27 Pennacook Street, CI # 2 observed a Hispanic individual known to it as "Peter," who was present inside the residence.

[4]CI # 2 contacted "Tony" at (603) 261-1031 in order to arrange for the transaction. During the conversation, "Tony" instructed CI # 2 to travel to 27 Pennacook Street. Once at the residence, "Peter" opened the door and conducted the transaction.

[2]When CI # 2 called (603) 261-1031, it spoke with "Peter," who agreed to engage in the transaction and instructed CI # 2 to travel to 27 Pennacook Street.

6

States currency for the transaction and surveilled by law enforcement. At no point in time did law enforcement determine that CI # 2 had inaccurately depicted the transaction as it had occurred.

On April 28, 2010, search warrants were executed at 27 Pennacook Street, 1st Floor, and 842 Somerville Street, 1st Floor. Among the items seized from 842 Somerville Street, 1st Floor, were: (1) cocaine in the amounts of 18.5 grams, 2.8 grams, and 1.6 grams; (2) $7,730.00 in United States currency; (3) $15,850.00 in United States currency; (4) $900.00 in United States currency; (5) 21 Oxycontin (oxycodone) tablets, (6) scales; and (7) packaging materials.

Jose Reyes, a/k/a "Tony," was present at 27 Pennacook Street at the time of the execution of the search warrant. Reyes was arrested and a search of his wallet revealed the presence of four (4) $100.00 bills. In addition, approximately 4.7 grams of cocaine was seized from a shelf located in the livingroom. A cellular telephone receipt for telephone number (603) 261-1031 was located at the residence and listed the address of the purchaser as 840 Somerville Street, Manchester, New Hampshire.

**4. Penalties**.

The defendant understands that the penalties for the offenses are:

A.    A term of imprisonment which may not be more than twenty (20) years and a fine of $1,000,000.00;

B.    A mandatory special assessment of $100.00 for each count of conviction ($400.00) which the defendant agrees to pay at or before the time of sentencing; and

C.    A term of supervised release which may not be less than three (3) years nor more than life.

7

The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. §3583).

5. **Sentencing and Application of the Sentencing Guidelines**.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that the defendant has no right to withdraw the defendant's guilty plea if the applicable advisory guideline range or the defendant's sentence is other than the defendant anticipated, except as expressly provided in this Plea Agreement.

The defendant also understands that the United States and the United States Probation Office shall:

A.    advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.    respond to questions from the Court;

C.    correct any inaccuracies in the pre-sentence report;

D.    respond to any statements made by the defendant or the defendant's counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant is aware that any estimate of the probable sentence or the probable sentencing range relating to the defendant pursuant to the advisory Sentencing Guidelines that the defendant may have received from any source is only a prediction and not a promise, and is

8

not binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

In addition to the other penalties provided by law, the Court may also order that the defendant make restitution under 18 U.S.C. § 3663.

### 6. **Stipulations and Other Agreements.**

The Government and the defendant have reached the following stipulation pursuant to Fed. R. Crim. P. 11(c)(1)(C).

**A.** The parties agree that defendant will be not be sentenced to a term of imprisonment greater than one hundred and fifty-one (151) months.

The parties intend the above stipulation to be binding under Fed. R. Crim. P 11(c)(1)(C). By using the word "binding," the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty pleas. The parties will not be allowed to withdraw from the Plea Agreement for any other reason.

### 7. **Acceptance of Responsibility**.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.    fails to admit a complete factual basis for the plea at the time the defendant is sentenced or at any other time;

B.    challenges the United States' offer of proof at any time after the plea is entered;

C.    denies involvement in the offense;

9

D.   gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   fails to give complete and accurate information about the defendant's financial status to the Probation Office;

F.   obstructs or attempts to obstruct justice, prior to sentencing;

G.   has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.   fails to appear in court as required;

I.   after signing this Plea Agreement, engages in additional criminal conduct; or

J.   attempts to withdraw the plea of guilty.

If the defendant's offense level is sixteen or greater, and the defendant has assisted the United States in the investigation or prosecution of the defendant's own misconduct by timely notifying the United States of the defendant's intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

The defendant understands and agrees that the defendant may not withdraw the defendant's guilty plea if, for any of the reasons listed above, the United States does not recommend that the defendant receive a reduction in the defendant's sentence for acceptance of responsibility.

10

The defendant also understands and agrees that the Court is under no obligation to reduce the offense level if it finds that the defendant has not accepted responsibility.

**8. Waiver of Trial Rights and Consequences of Plea.**

The defendant understands that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant. The defendant understands that the defendant has the right:

A.      to plead not guilty or to maintain that plea if it has already been made;

B.      to be tried by a jury and, at that trial, the right to the assistance of counsel;

C.      to confront and cross-examine witnesses against the defendant;

D.      not to be compelled to provide testimony that may incriminate the defendant; and

E.      to compulsory process for the attendance of witnesses to testify in the defendant's defense.

The defendant understands that by pleading guilty the defendant waives and gives up those rights and that if a plea of guilty is accepted by the Court, there will not be a trial of any kind.

The defendant understands that if the defendant pleads guilty, the Court may ask the defendant questions about the offense, and if the defendant answers those questions falsely under oath, on the record, and in the presence of counsel, the defendant's answers may later be used against the defendant in a prosecution for perjury or making false statements.

**9. Acknowledgment of Guilt; Voluntariness of Plea.**

The defendant acknowledges that the defendant:

A.      is entering into this Plea Agreement and is pleading guilty freely and voluntarily because the defendant is guilty;

11

B.     is entering into this Plea Agreement without reliance upon any discussions with
       the United States and without promise of benefit of any kind except as described
       in this Plea Agreement;

C.     is entering into this Plea Agreement without threats, force, intimidation, or
       coercion of any kind;

D.     understands the nature of the offense to which the defendant is pleading guilty,
       including the penalties provided by law; and

E.     is completely satisfied with the representation and advice received from the
       defendant's undersigned attorney.

### 10. Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the
undersigned parties and cannot bind any other non-federal, state or local authority. The
defendant also acknowledges that no representations have been made to him about any civil or
administrative consequences that may result from the defendant's plea of guilty. The defendant
understands such matters are solely within the discretion of the specific non-party government
agency involved. The defendant further acknowledges that this Plea Agreement has been
reached without regard to any civil tax matters that may be pending or which may arise
involving the defendant.

### 11. Collateral Consequences.

The defendant understands that the defendant will be adjudicated guilty of the offense to
which the defendant will plead guilty and may thereby be deprived of certain federal benefits
and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess
firearms.

12

**12. Satisfaction of Federal Criminal Liability; Breach**.

The defendant's guilty plea, if accepted by the Court, will satisfy any federal criminal

liability of the defendant in the District of New Hampshire as a result of the defendant's

participation in the conduct which forms the basis of the Superseding Information in this case.

The defendant understands that if, before sentencing, the defendant violates any term or

condition of this Plea Agreement, engages in any criminal activity, or fails to appear for

sentencing, the United States may consider such conduct to be a breach of the Plea Agreement

and may withdraw from it.

**13. Waivers.**

**A.     Appeal**

The defendant is aware that the defendant has the right to challenge the defendant's

sentence and guilty plea on direct appeal.  By entering into this Plea Agreement, the defendant

knowingly and voluntarily waives his right to challenge on direct appeal:

1.     The defendant's guilty plea and any other aspect of defendant's conviction,
        including, but not limited to, any rulings on pretrial suppression motions or any
        other pretrial dispositions of motions and issues; and

2.     The defendant's sentence imposed by the Court if within the terms agreed upon
        and stipulated to in this Plea Agreement.

The defendant's waiver of rights does not operate to waive appeal based upon new legal

principles enunciated in Supreme Court or First Circuit case law after the date of this Plea

Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel in

the negotiation of this Plea Agreement or at the sentencing hearing.

13

**B.    Collateral Review**

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion under 28 U.S.C. § 2255 or § 2241.  By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.    The defendant's guilty plea and any other aspect of defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and

2.    The defendant's sentence imposed by the Court if within the terms agreed upon and stipulated to in this Plea Agreement.

The defendant's waiver of the right to collateral review does not extend to claims that the plea was unknowing or involuntary or to claims that the defendant received ineffective assistance of counsel in the negotiation of the plea, plea agreement or the sentencing hearing. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by the Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

**C.    Freedom of Information and Privacy Acts.**

The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

14

**D.    Appeal by the Government**

This Plea Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the United States therefore retains its appeal rights.

**14. No Other Promises.**

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

**15. Final Binding Agreement.**

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and his attorney and until signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

**16. Agreement Provisions Not Severable.**

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

Dated: June 8, 2012.

> JOHN KACAVAS
> United States Attorney
>
> By:
> Terry L. Ollila
> Assistant U.S. Attorney
> U.S. Attorney's Office
> Bar No. 560603
> 55 Pleasant Street
> Concord, NH 03301
> (603) 225-1552

15

The defendant certifies that he has read this 15-page Plea Agreement and that he fully understands and accepts the terms thereof.

Jose Reyes, defendant

Date: June 7, 2012.

I have read the above and explained it to my client, who advises me that he understands and accepts its terms.

Paul Garrity, Esquire,
Counsel for defendant

Date: June 7, 2012.