\*\*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 11-7-2012

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                 *
UNITED STATES OF AMERICA         *
                                 *  11-CR-22-01-JD
            v.                   *  June 6, 2012
                                 *  2:35 p.m.
      JOSE REYES                 *
                                 *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JOSEPH A. DICLERICO

APPEARANCES:

| | |
|---|---|
| For the Government: | Terry Ollila, AUSA<br>U.S. Attorney's Office |
| For the Defendant: | Paul Garrity, Esquire<br>Garrity Law Office |
| Interpreter: | Rafael Rodriguez |
| Court Reporter: | Susan M. Bateman, LCR, RPR, CRR<br>Official Court Reporter<br>United States District Court<br>55 Pleasant Street<br>Concord, NH 03301<br>(603) 225-1453 |

```
 1                    P R O C E E D I N G S
 2             (Interpreter sworn in by the deputy clerk)
 3             THE COURT:  All right.  Good afternoon.
 4             MS. OLLILA:  Good afternoon.
 5             MR. GARRITY:  Good afternoon.
 6             THE COURT:  This is a hearing on the motion
 7   to terminate current counsel.  What the Court proposes
 8   to do is to have an in camera hearing and then invite
 9   the government back to state its position on that
10   motion.
11             MS. OLLILA:  Thank you very much, Judge.
12             (Attorney Ollila leaves the courtroom)
13             (This portion of the record is sealed)
14             (Attorney Ollila returns to the courtroom)
15             THE COURT:  All right.  Ms. Ollila, is there
16   anything you would like to say with respect to this
17   motion?
18             MS. OLLILA:  Thank you, your Honor.
19             The United States objects to the motion for
20   the following reasons:
21             First, if your Honor grants the motion this
22   will be the defendant's third appointed counsel.  He
23   started with Jonathan Saxe from the Federal Public
24   Defender's Office.  Attorney Garrity then took over.
25   This case has been pending for a significant period of
```

 1   time.

 2           The United States has turned over all of the

 3   discovery, all of the Jencks information, all of the

 4   Brady and Giglio information in this case, and why

 5   that is important is as follows:

 6           This case -- in the case the United States

 7   will use four separate co-conspirator witnesses,

 8   including the following:  Howard Ross, who acted as

 9   the confidential informant; Kelly Guay, G-U-A-Y, who

10   was a co-conspirator purchasing drugs from individuals

11   associated with this defendant; an individual by the

12   name of Kurt Coriaty, C-O-R-I-A-T-Y, and Nicole Wells,

13   W-E-L-L-S.

14           The United States turned over their Jencks

15   materials to counsel for the defendant approximately

16   three months ago and advised counsel that those four

17   co-conspirator witnesses would testify.  And when I

18   turned the Jencks information over to defense counsel

19   I obtained the assurance that defense counsel would

20   read the statements to the defendant and wouldn't give

21   him a copy of those statements, because it's dangerous

22   to have co-conspirator witness statements at a jail

23   when some of those witnesses are presently

24   incarcerated.

25           Defense counsel kept his word and read all of

1  the Jencks information to the defendant.  The United
2  States' intention at the time was to attempt to
3  negotiate a reasonable plea disposition.
4          THE COURT:  What is the -- there's been a
5  superseding indictment filed.  Now, with respect to
6  the original indictment, the government filed a notice
7  of sentencing enhancement.
8          MS. OLLILA:  That's correct, your Honor.
9          THE COURT:  That has not occurred yet with
10 respect to the superseding indictment.
11         MS. OLLILA:  That's correct, your Honor.
12         THE COURT:  Does the government intend to do
13 that, file the --
14         MS. OLLILA:  Yes, we do, your Honor, if this
15 proceeds to trial.  But what is most important about
16 this defendant is regardless of the sentencing
17 enhancement this defendant is a career offender.
18         THE COURT:  So what is his exposure without
19 the enhancement?
20         MS. OLLILA:  Without the enhancement his
21 exposure, with the plea, Judge -- with the plea --
22         THE COURT:  No.  I don't want to go into the
23 plea.  I want to know what is his exposure under the
24 superseding indictment without the notice of
25 sentencing aspect.

```
 1            MS. OLLILA:  Correct.  Okay.  Without the
 2   notice, if convicted, his sentence will be 210 to 262
 3   months.
 4            THE COURT:  All right.
 5            MS. OLLILA:  With the notice his sentence
 6   will be 262 to 327 months.
 7            THE COURT:  All right.  And the government
 8   has until we start the trial to file a sentencing
 9   enhancement on the superseding indictment.
10            MS. OLLILA:  That's correct, your Honor.
11            THE COURT:  All right.  I didn't mean to
12   interrupt.  I just wanted to get that.
13            MS. OLLILA:  Sure.  And it's important,
14   because regardless of the quantities that your Honor
15   finds or that, for example, the jury would find --
16            THE COURT:  Will the jury be asked to find
17   quantities or is there any need to in this case?
18            MS. OLLILA:  There's no need to because of
19   his career offender status.
20            THE COURT:  And the government will rely on
21   the statutory maximums.
22            MS. OLLILA:  Exactly, your Honor.  Exactly.
23            THE COURT:  Okay.
24            MS. OLLILA:  Now, the filing of the
25   sentencing enhancement is important.  When I indicated
```

1  to your Honor the sentencing enhancement would result
2  in 262 to 327 months, that's important because without
3  it the statutory max is 20 years.  With it the
4  statutory max is 30 years.
5         So just to take a step back, defense counsel
6  has had for many months and has read all of the
7  co-conspirator statements to the defendant at his
8  place of incarceration but didn't give him a copy.
9         Now, the United States on May 1st sent those
10 statements in ordinary discovery and indicated to
11 counsel for the defendant, here is the Giglio.  Here
12 is the Brady.  You may now turn all of this over.  The
13 entire Giglio package has therefore been out since May
14 1st.
15        The witnesses themselves -- for example,
16 Kelly Guay and Nicole Wells, they're presently
17 incarcerated.  We had to take them from Connecticut,
18 their place of incarceration, and bring them to New
19 Hampshire where they have remained.
20        Nicole Wells is currently incarcerated at the
21 Strafford County House of Correction.  She deserves to
22 do one of two things:  To go back to BOP instead of
23 languishing here waiting for the defendant to have his
24 trial and waiting to testify.  It's completely unfair
25 for Nicole Wells.

 1          Kelly Guay -- your Honor may remember we were
 2   originally scheduled for trial in March.  At that time
 3   the United States brought Nicole Wells and Kelly Guay
 4   from their place of incarceration.  So they have been
 5   here since March.
 6          As it turned out, when trial didn't occur in
 7   March I had a difficult choice to make because Kelly
 8   Guay was eligible to be released to a halfway house.
 9   I wanted to keep her in New Hampshire, but if I kept
10   her in New Hampshire it meant she would miss her
11   placement at the halfway house.  So I sent her back to
12   her place of incarceration so she could be released to
13   a halfway house.  She's now at a halfway house in
14   Massachusetts.  Delaying this trial will once again
15   hurt her because we, the United States, are constantly
16   having to grab her from the halfway house now and
17   bring her out.  As it is now, she's scheduled to be
18   here on Monday.  It's a huge burden for her, for the
19   halfway house, and for law enforcement to get her
20   here.  It impacts her treatment, your Honor.
21          The confidential informant witness, Howard
22   Ross, had to be moved out of the jurisdiction because
23   of his fear because of this case.  We have to
24   transport him from across the country back to New
25   Hampshire.  He has a child with him halfway across the

1  country that he's trying to care for.  Bringing him
2  back into New Hampshire is a huge burden.  It means
3  that he'll have to be here for four or five days and
4  not be able to care for his child who will remain
5  halfway across the country.
6           Continuing to delay this, if new counsel is
7  appointed, that means that given the complexities of
8  this case new counsel, in my estimation, will take
9  anywhere from at least three to six months to
10 adequately prepare.  It's a huge burden on the United
11 States.
12          The exhibit list has been prepared.  All the
13 witnesses are being prepared.  All the witnesses have
14 been lined up.
15          To delay this case once again for at least a
16 minimum of three months would be unjust for the
17 witnesses and unjust for the United States who has in
18 each instance -- in March we were ready and willing
19 and able to go to trial.  Now it's June, and we're
20 still ready, willing and able to go to trial.
21          Yet again, having Giglio and Brady
22 information out in the community on its witnesses
23 presents a real serious risk to co-conspirators,
24 Judge.
25          THE COURT:  Thank you.  Is there anything

1  further that either Mr. Garrity or Mr. Reyes wishes to
2  say?
3           THE DEFENDANT:  When I see that my attorney
4  has had the discovery records for so long and still
5  hasn't turned those over to me, and so I haven't had
6  the chance to review and study that.
7           MR. GARRITY:  Judge, as Ms. Ollila said, I
8  did read all of the proffer statements with the
9  assistance of Edwin Mosquera, who was here earlier, to
10 Mr. Reyes I believe in March.
11          I did get the materials from Ms. Ollila in
12 early May, but for some reason I misplaced them.  Ms.
13 Ollila re-mailed those materials to me at the
14 beginning of last week, which I thought went out to
15 Mr. Reyes.  So he's correct.  He does not yet have
16 those.
17          THE COURT:  But they're on the way?
18          MR. GARRITY:  They're on the way and the
19 proffer material --
20          THE COURT:  And you will be meeting with him
21 undoubtedly before trial --
22          MR. GARRITY:  I will, Judge.
23          THE COURT:  -- on several occasions to go
24 over those.
25          MR. GARRITY:  I will, Judge.

1          THE COURT:  All right.  You may be seated.
2    The Court is going to deny your motion.
3          This motion comes at the twelfth hour, in
4    effect.  The case is scheduled for June 19th and
5    important materials have been turned over already, as
6    the government has indicated, Giglio and Jencks
7    materials.
8          Mr. Garrity is in the process of reviewing
9    those with his client.  As he has stated, he is
10   prepared for trial.  He will be prepared for trial.
11   He will represent the defendant and present any
12   defenses that he has to these charges.
13         The Court has not heard anything which
14   reflects upon his competence or on the diligence with
15   which he has been representing the defendant and
16   preparing for trial.
17         Yes, there have been problems with telephone
18   calls, as has been noted by Mr. Reyes and by Mr.
19   Garrity.  That is not unusual under the circumstances.
20   And as long as they have been in communication, some
21   missed calls certainly is not a reason in and of
22   itself to dismiss counsel.
23         As the Court said, this request comes at the
24   eleventh hour.  This case is old.  It goes back, in my
25   recollection, to January or February of 2011.  It is

1  time that it go to trial.

2         There are serious consequences, Mr. Reyes, as
3  you've just heard the prosecutor indicate the exposure
4  here in terms of a sentence if you were convicted, and
5  so the Court encourages you and indeed urges you to
6  cooperate with your counsel in preparing for the trial
7  of this case since there is a great deal at stake for
8  you in this matter.

9         In terms of scheduling, the jury will be
10 drawn on June 19th.  We will proceed with the evidence
11 Tuesday, Wednesday, Thursday, Friday.  Monday of the
12 following week will not be a court day.  So if the
13 case carries over, either in terms of evidence or in
14 terms of submitting it to the jury, the next court day
15 will be on Tuesday of the following week.  So I just
16 want you to be aware of that.  All right.

17         MS. OLLILA:  Thank you very much, Judge.

18         MR. GARRITY:  Thank you, Judge.

19         (Conclusion of hearing at 3:00 p.m.)

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E
 2
 3
 4         I, Susan M. Bateman, do hereby certify that the
 5    foregoing transcript is a true and accurate
 6    transcription of the within proceedings, to the best of
 7    my knowledge, skill, ability and belief.
 8
 9
10    Submitted: 8-9-12              Susan M. Bateman
                                     SUSAN M. BATEMAN, LCR, RPR, CRR
11                                   LICENSED COURT REPORTER, NO. 34
                                     STATE OF NEW HAMPSHIRE
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```