UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.           ) | No.  1:11-cr-22-JD |
| ) | |
| **JOSE REYES**          ) | |

### SENTENCING MEMORANDUM OF THE UNITED STATES

The United States of America, by John P. Kacavas, United States Attorney for the District of New Hampshire, submits the following sentencing memorandum in support of its request for a sentence of 151 months.

**I.     Procedural Summary**.

Reyes was originally charged by a grand jury for the District of New Hampshire on February 16, 2011 in a seven count indictment alleging one count of conspiracy to distribute cocaine, three substantive counts of cocaine distribution, and three counts of aiding and abetting the distribution of cocaine.  *United States v. Reyes*, No. 1:11-cr-22-01-JD, Docket Entry ("DE") 1 (D.N.H.  Feb. 16, 2011).  The defendant was arrested on the charges set forth in the indictment on May 16, 2011 and temporarily detained.  DE 6.  On May 19, 2011, the defendant stipulated to detention.  DE 10.  He has been detained since that time.

A plea agreement subject to the provisions of Fed. R. Crim. P. 11(c)(1)(C) was tendered to Reyes on or about September  2011.[1]  Reyes rejected the government's offer and indicated a desire to proceed to trial.  Reyes sought numerous continuances of the trial date.  DE 15, 18.

---

[1] The United States is cognizant of the prohibition set forth at Fed. R. Crim. P. 11(c)(1) that a court must not participate in plea discussions.  Accordingly, the United States has not set forth the details of the prior plea offer.  The government mentions the prior plea offer for purposes of documenting Reyes' knowledge that a prior plea offer was received and rejected by Reyes.  *Missouri v. Frye*, WL 932020 (March 21, 2012).

1

On February 24, 2012, an Information was filed by the government under 21 U.S.C. § 851 noticing a sentencing enhancement that listed two prior drug trafficking convictions and the enhanced penalties that followed therefrom under 21 U.S.C. §§ 841(b)(1)(A), (b)(1)(B), and (b)(1)(C).  The effect of the § 851 notice at the time was to raise the statutory maximum sentence that Reyes was facing from 20 years to 30 years, to increase the fine amount to two million dollars, and to increase the mandatory minimum supervise release period from three to six years. 21 U.S.C. §841(b)(1)(C).

On March 7, 2012, the grand jury returned a superseding indictment that amended the count one conspiracy charge to broaden the time frame of the alleged conspiracy to include the period from June 2005 through March 2011 and expanded the conspiracy to include the District of Massachusetts.  DE 24.  After the superseding indictment was returned, Reyes sought several continuances and filed a motion to suppress. DE 28, 35, 33.  The court denied Reyes' suppression motion on May 16, 2012.  DE 39.  Trial was scheduled for June 19, 2012.  DE 36.

Reyes filed a motion to appoint new counsel, DE 40, which was heard by the court on June 6, 2012.  At the hearing, the United States mistakenly provided the court with inaccurate information as to the effect of the sentencing information filed on February 24, 2012 with respect to the March 7, 2012 superseding indictment.  The government informed the court that the previously filed sentencing notice did not apply to the superseding indictment when it does so apply.

A change of plea hearing was held on June 8, 2012 based on the filing of a superseding information and plea agreement that included Reyes' agreement to plead guilty to a cocaine

distribution conspiracy and three substantive counts of cocaine distribution.  DE 42, 43.[2]  The plea agreement is subject to the provisions of Fed. R. Crim. P. 11(c)(1)(C) and provides that Reyes may withdraw his guilty plea if the incarcerative sentence imposed by the court exceeds 151 months.

**II.   Sentencing Arguments.**

The presentence investigation report ("PSR") in this case properly concludes that Reyes qualifies as a career offender under the sentencing guidelines because Reyes has two predicate felony drug trafficking convictions and the instant offense is a drug trafficking offense.  PSR at ¶ 20; U.S.S.G. §4B1.1(A), §4B1.2(b)(defining a controlled substance offense as including distribution offenses).  The PSR is incorrect in concluding, however, that the quantity of cocaine that is reasonably assignable to Reyes, based on credible evidence, exceeds five kilograms and the government objects to that portion of the PSR.  Similarly, the PSR is also incorrect in concluding that Reyes should be assigned a two level increase for being an organizer or leader under U.S.S.G. § 3B1.1(c) and the government objects to that portion of the PSR.

   A.   The Drug Quantity Reasonably Attributable to Reyes Based on the Credible Evidence is Greater than 500 Grams, but Less than Two Kilograms, of Cocaine.

The PSR concludes that Reyes should be held responsible for more than five kilograms of cocaine.  PSR at ¶ 19.  The PSR reaches this conclusion after reviewing information provided to the probation office by the United States that came from certain confidential informants.  Importantly, the PSR's conclusion that Reyes is responsible for more than five kilograms of cocaine depends almost entirely on the information provided by CI #3, who claimed that it purchased two ounces of cocaine from Reyes every day between 2005 and 2007.  Information

---

[2] The superseding information and plea agreement were filed without the approval of the supervisory staff at the United States Attorney's Office.  Nevertheless, the United States will stand by the commitments set forth in those pleadings.

3

provided to the probation office by the United States includes CI #3's claims that he made daily purchases of cocaine directly from the defendant at the defendant's residence on Spruce Street in Manchester and then at the defendant's residence of Lake Avenue in Manchester in 2005 and 2006. Although the purchases started as small quantity purchases, they soon increased to one to two ounces per day. As the PSR admits, however, Reyes was incarcerated from November 2001 through November 9, 2006. PSR at ¶ 42. Accordingly, it is not possible that CI #3 could have purchased any amount of cocaine directly from Reyes on a daily basis in years 2005 and 2006. Nevertheless, the PSR credits CI #3's claims of engaging in drug transactions with Reyes but reduces them to one ounce per day for a 12-month period, and finds that a conservative amount attributable to Reyes as a result of his dealings with CI #3 is 10.206 kilograms (28.35 grams per day for one year).

The United States contends that no drug quantity should be assigned to Reyes based upon the claims of CI #3 because, in the view of the United States, CI #3's claims lack credibility. CI #3 claimed that he dealt directly with the defendant daily at the defendant's residence on Spruce Street and then on Lake Avenue during the period from 2005 through 2007. Clearly, CI #3 was either severely mistaken, has misidentified someone else as the defendant, or is untruthful. Regardless of the explanation for CI #3's erroneous information, the United States is unwilling to elicit testimony from a witness who made claims of face-to-face drug transactions with the defendant when such face-to-face dealings were factually impossible.

CI #3's error as to years 2005 and 2006 taint any reliance on his information with regard to 2007. Accordingly, the United States will not offer any evidence to support the claims made by CI #3 as to the drug quantity assignable to Reyes.

The United States contends that a more reasonable, albeit extremely conservative of the quantity assignable to Reyes, is derived from either of two methods, each based on the actual controlled sales to which Reyes has pleaded guilty.  First, the court should consider an extrapolation of the actual amounts purchased during the controlled transactions.  Using that method, the evidence establishes beyond any doubt that Reyes is responsible for 24.26 grams sold during the period from April 4, 2010 through April 28, 2010.  That period of time comprises 24 days, yielding an average of 1 gram per day.  If the court were to view the conspiracy as encompassing the period from January 1, 2008 through April 28, 2008, a total of 848 days, it establishes a quantity of 848 grams of cocaine.  Again, this is an extremely conservative calculation that accrues to Reyes benefit as to quantity and time frame of the conspiracy.  *See*, *United States v. Platte*, 577 F.3d 387, 391, 393 (1st Cir. 2009) (Noting court's conservative estimate of drug quantity.).  This calculation is supported by the information provided by CI #2 that it purchased cocaine from the defendant and his co-conspirators approximately two to three times per week for a six month period before making the controlled purchases.

An alternative method of calculating the quantity assignable to Reyes is to combine the amounts amount seized from one of Reyes' residences, 27.6 grams, with an amount derived by converting the cash seized during the April 28, 2010 search, $24,880.   The 24.26 grams from the controlled transactions were purchased for total of $1700, yielding a per gram cost of $70.07.  Dividing the $24,880 figure by $70.07 yields 355.07 grams.  Adding the 27.6 grams seized on April 28, 2010 to the 355.07 grams yields 382.67 grams.[3]  Given that the difference between the 500 gram threshold and the quantity arrived at based on the April 28, 2010 seizures is 117.33

---

[3] The 382.67 quantity does not include the 24.26 grams that were purchased through controlled transactions.  In an abundance of caution, the government did not include that quantity to avoid any claim of double counting.

5

grams, the court could reasonably conclude that Reyes, having plead guilty to a conspiracy that ended on or about March 2011, is responsible for more than 500 grams of cocaine.[4]

Either of the methods set forth above establishes by a preponderance of the evidence that Reyes is responsible for distributing more than 500 grams of cocaine during the course of the conspiracy.

A defendant is responsible at sentencing for drugs he personally handled or anticipated handling and, under the relevant conduct principles, for a quantity of drugs that result from reasonably foreseeable acts committed in furtherance of the conspiracy. *United States v. Rivera-Calderon*, 578 F.3d 78, 100 (1st Cir. 2009). The court's finding as to quantity must be based on a preponderance of the evidence, but the court may rely on "reasonable estimates and averages." *Id. citing United States v. Rivera Maldonado*, 194 F.3d 224, 228-229 (1st Cir. 1999). "When it is reasonably probable that confiscated cash represents either drug profits or money dedicated to the upcoming purchase of contraband, a sentencing court may convert the cash into equivalent amounts of narcotics for relevant conduct purposes." *United States v. Sepulveda,* 15 F.3d 1161, 1201 (1st Cir. 1993). *See*, U.S.S.G. § 2D1.1 comment n. 12 (Where…the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of controlled substances.).

The reliable evidence in this case establishes that Reyes should be held accountable for more than 500 grams, but less than two kilograms, of cocaine. Such a finding is supported by the evidence, is extremely conservative as to its estimate, and is based on estimates that accrue to Reyes' benefit.

---

[4] CI #2, the individual who engaged in the controlled purchases, provided additional information that it purchased eight grams per week for two months in June and July 2009, and then 10 grams per day for the period from August through October 2009. CI #2 then purchased at least 6 grams per week from the period from December 2009 through February 2010. These amounts closely mirror the amounts of the controlled transactions.

      B.      Reyes does not warrant an organizer enhancement under U.S.S.G. § 3B1.1(c).

The PSR assigns Reyes two levels for being an organizer under U.S.S.G. § 3B1.1(c). PSR at ¶ 20. The PSR states that Reyes warrants the assessment because he organized the distribution of cocaine between two residences using at least three runners.

The government contends that a preponderance of the evidence does not support a finding that Reyes was an organizer. Rather, the evidence suggests that Reyes was a essentially a co-equal to his fellow conspirators.

CI #2 told law enforcement that it acquired cocaine from Reyes and "Johnny" at 27 Penacook Street in Manchester. Of the nine controlled transactions, Reyes engaged in three, "Johnny" engaged in three and "Peter" engaged in three. Although CI #2 spoke to Reyes to arrange many of the transactions, he also spoke to Peter and Johnny to arrange transactions.

CI #3 told law enforcement that it believed that Peter had more power than Reyes and that Peter was responsible for supplying the cocaine while Reyes was responsible for its distribution. CI # 3 told law enforcement that Johnny worked for Reyes and Peter.

CI #5 told law enforcement that Peter and Johnny worked for Reyes as runners and would refer CI #5 to Reyes if the CI wanted to buy additional quantities of cocaine.

The First Circuit has characterized the requirements for a two level role in the offense enhancement as follows:

> Role-in-the-offense adjustments address concerns of relative responsibility. [A two-level increase] is justified if the sentencing court supportably finds that (1) the criminal enterprise involved at least two complicit participants (of whom the defendant may be counted as one), and (2) the defendant, in committing the offense, exercised control over, organized, or was otherwise responsible for superintending the activities of, at least one of those other persons.

*United States v. Zayas*, 568 F.3d 43, 46 (1st Cir. 2009). While the evidence could be construed to support the application of the enhancement in this case, it equally supports a view that Reyes and

7

his partners were co-equals who conducted drug transactions as circumstances would warrant. The information provided by the various CIs is mixed on this point. Accordingly, the government will not seek application of a role-in-the-offense enhancement.

    III.    A Sentence of 151 Months is a Sufficient, But Not Greater Than Necessary, Sentence In this Case.

Should the court find that a quantity of 500 grams or more but less than two kilograms of cocaine is attributable to Reyes, the offense level from the drug quantity table would be level 26 (500 grams to two kilograms cocaine). After a two level adjustment for acceptance of responsibility, the offense level would be 24. At criminal history category III, PSR at ¶ 43, the advisory guideline range would be 63 to 78 months.[5]

Reyes qualifies, however, as a career offender under U.S.S.G. § 4B1.1 with an offense level of 34 and a criminal history category of VI. After an adjustment for acceptance of responsibility, the offense level is 32, resulting in a range of 210 to 262 months.

The parties entered into a plea agreement subject to the terms of Fed. R. Crim. P. 11(c)(1)(C) that allows Reyes to withdraw his plea if the court imposes a sentence of greater than 151 months. Because there is a minimum mandatory sentence of 120 months, should the court find a drug quantity of 500 grams or more, Reyes must be sentence to not less than 120 months or more than 151 months.

A sentence of 151 months incarceration is warranted based on the nature of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Reyes is a recidivist. His drug trafficking activities began in 1998, PSR at ¶ 39. He received a six month suspended sentence at that time, which was brought forward in 1999 after he was convicted of

---

[5] Because the drug quantity is 500 or more grams, Reyes is subject to a statutory mandatory minimum sentence of 120 months. 21 U.S.C. § 841(b)(1)(B); 21 U.S.C. § 851. Thus, absent the application of the career offender provisions, Reyes' sentencing range is 120 months pursuant to the provisions of U.S.S.G. § 5G1.1(b).

8

trafficking heroin and cocaine. PST at ¶ 40. He served a total of 24 months, but was again convicted of drug trafficking shortly after his release in 2001. PSR at ¶ 42. He was then sentenced to a five year term in prison.

Upon his release in November 2006, Reyes immediately returned to drug trafficking as set forth in the instant indictment. A sentence of 151 months is appropriate in that it recognizes the seriousness of drug trafficking as an offense and also recognizes that Reyes returned to drug trafficking at the first opportunity upon his release from incarceration.

A sentence of 151 months also promotes respect for the law, reflects the seriousness of the offense and is a just punishment. 18 U.S.C. § 3553(a)(2)(A). Reyes has demonstrated an utter disrespect for the rule of law. He has returned to criminal activity at the first opportunity upon release from prison. He views drug trafficking as a business and has shown no understanding of the seriousness of the offense on the community. In light of the incremental sentences he has received in the past, 24 months and then five years, a sentence of 151 months is a just punishment for Reyes' return to a criminal lifestyle.

The sentence requested by the government will also promote general deterrence, though it is unlikely Reyes can be deterred as an individual. 18 U.S.C § 3553(a)(2)(B). Such a sentence is significant and would send an important message to those who may consider pursuing a lifetime of criminal conduct.

A sentence of 151 months also serves to protect the public from Reyes. 18 U.S.C. § 3553(a)(2)(C). He has demonstrated that he is a recidivist. He has demonstrated he is a threat to the safety of the community. He has demonstrated that periods of incarceration have had no impact on his willingness to engage in the drug trade.

IV.	Conclusion.

For the reasons set forth above, the United States requests that the court sentence Reyes to a period of incarceration of 151 months.

Respectfully submitted,

JOHN P. KACAVAS
United States Attorney

/s/ Donald Feith
First Assistant U.S. Attorney
New Hampshire Bar # 783
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
Donald.Feith@usdoj.gov

## CERTIFICATION

I hereby certify that a copy of this sentencing memorandum was served electronically, through ECF, on Paul Garrity, 14 Londonderry Road, Londonderry, New Hampshire, 03053, counsel for Jose Reyes, on September 5, 2012.

/s/ Donald Feith
First Assistant U.S. Attorney
